IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS BERRIOS, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 12-7245 |
| | : | |
| CITY OF PHILADELPHIA et al., | : | |
| Defendants. | : | |

**Jones, II    J.**                                                    **March 31, 2015**

**<u>MEMORANDUM</u>**

In his Amended Complaint, (Dkt No. 4, Amended Complaint [hereinafter AC]), Luis A. Berrios, III ("Plaintiff") sued the City of Philadelphia ("the City"), Police Officer Michael Gentile ("Gentile"), Police Officer Robert Tavarez ("Tavarez") (collectively "the officers"), Detective Joseph Newbert ("Newbert") (collectively "Police Defendants") regarding an incident on December 28, 2010.

Across eight counts, the AC alleged four violations of Plaintiff's Fourth and Fourteenth Amendment rights by the Police Defendants, in their individual and official capacities, pursuant to 42 U.S.C. § 1983, including allegations of false arrest, false imprisonment, and malicious prosecution (Count II), failure to intervene (Count III), conspiracy (Count V), and denial of equal protection of the laws (Count VI); a § 1983 claim of excessive force, and a state claim for assault and battery, against Gentile (Counts I and VIII); state law claims for false arrest, false imprisonment, and malicious prosecution against Police Defendants (Count IV); and a claim against the City of Philadelphia for failure to train and supervise (Count VII).

Defendants have moved for partial summary judgment against Count II, Count III, Count IV, Count V, Count VI and Count VII. (Dkt No. 23, Defs' Mot. for Partial Summary Judgment [hereinafter MSJ].) After a thorough review of the record, including Defendants' Motion for Partial Summary Judgment, and Plaintiff's Response, (Dkt No. 24, Pl.'s Resp. to Defs' Mot. for

Summary Judgment [hereinafter Pl. Resp.]), the Court will GRANT IN PART AND DENY IN PART the Motion. The Court GRANTS summary judgment as to Counts II, Count III only as to Gentile, Count IV, Count V, Count VI, and Count VII, and DENIES summary judgment as to Count III only as to Tavarez and Newbert. Plaintiff's claims under Count I, Count III as to Tavarez and Newbert, and Count VIII remain.

## I.    Factual Background

The Court recites the undisputed facts as viewed in the light most favorable to Plaintiff. The Court further notes where salient facts remain disputed.

On December 28, 2010, Plaintiff lived at 4545 N. 7th Street in Philadelphia, PA. Early in the morning on December 28, 2010, Plaintiff went to his neighbor, Reiny Rosario ("Rosario"), and told him that he and his boyfriend were having a disagreement, and if he did not return in five minutes to call the police. (Dkt No. 24, Ex. E, Reiny Rosario Affidavit, December 1, 2014 [hereinafter Rosario Aff.].) Rosario did call the police. (Rosario Aff.)

Tavarez and Gentile responded to a radio call to travel to 4545 N. 7th Street in Philadelphia, PA on December 28, 2010. (Dkt No. 23, Defs' Statement of Undisputed Material Facts [hereinafter Defs SOF] ¶ 1; Dkt No. 24, Pl.'s Statement of Material Facts [hereinafter Pl. SOF];  Dkt No. 23, Ex. A, Philadelphia Police Department Arrest Memo [hereinafter Arrest Mem.]; Dkt No. 24, Ex. B, Deposition of Michael J. Gentile, November 26, 2013 [hereinafter Gentile Dep.] 5:6-12.) The radio call transcripts reveal that at 1:44:06AM, Radio stated to Police, "Alright units responding to 4545 N. 7th, person with a weapon, if not on location, slow it down." (Dkt No. 24, Ex. F., Radio Call Logs [Radio Logs] at 1.44.06 AM.)

When Tavarez and Gentile arrived at the residence, they observed a shattered fish tank. (Defs SOF ¶¶ 2-3; Pl. SOF ¶ 3; Gentile Dep. 10:12-18.) There is a dispute of fact regarding what

else the officers observed upon arriving on the scene. The Arrest Memo states that "we also observed broken furniture all over the living room and bedroom." (Arrest Mem.) In his deposition, Gentile reported that "the whole house was in disarray." (Gentile 4-5.) This account is disputed by Plaintiff. (Pl. SOF ¶ 3.) However, in Plaintiff's deposition, he confirmed that his boyfriend had broken his laptop, thrown a cup, and was "knocking things over." (Berrios Dep. 14:5-14:24.) Thus, the Court finds it undisputed that Tavarez and Gentile arrived at the apartment and viewed broken things strewn across the living room.

The first person that the officers encountered was Jason Mendez ("Mendez"). (Defs SOF ¶ 4; Pl. SOF ¶ 4; Arrest Mem.; Gentile Dep. 7:23.) Mendez told the officers that Plaintiff had hit him in the face with an iron. (Gentile Dep. 9:24-9:1.) There is a dispute of fact between the parties as to whether or not Mendez had visible injuries. At his deposition, Gentile stated that "Right away I noticed he had some bruising, redness and a little blood on his face." (Gentile Dep. 8:22-24; *see also* Gentile Dep. 10:14-18.) However, the veracity of this statement remains disputed.

The officers then encountered Plaintiff. (Defs SOF ¶ 6; Pl. SOF ¶ 6; Arrest Mem.; Berrios Dep. 22:9-24.) Plaintiff told the officers that he hit Mendez in the face with an iron. (Defs SOF ¶ 7; Pl. SOF ¶ 7; Arrest Mem.; Dkt No. 23, Ex. B, Deposition of Luis A. Berrios, III, November 26, 2013 [hereinafter Berrios Dep.] 23:10-17.) The parties dispute what else was said between Plaintiff and Tavarez at this time, particularly whether Plaintiff explained that he acted in self-defense and whether Tavarez agreed that it appeared Plaintiff had acted in self-defense. Further, the parties dispute at what time in the chain of events the officers learned that Plaintiff and Mendez were boyfriends.

The officers separated Plaintiff and Mendez. (Defs SOF ¶ 8; Pl. SOF ¶ 8.) The officers told Plaintiff to stay in the kitchen. (Defs SOF ¶ 9; Pl. SOF ¶ 9.) There is a dispute of fact as to what was happening between Mendez and the officers at this time. Though, all parties agree that at some point, Mendez began screaming. (Defs SOF ¶ 12; Pl. SOF ¶ 12; Berrios 24:1-5; 27:7-10; 37:15-23; Gentile 14:8-10; 15:20-22.) Tavarez told Plaintiff to stay in the house, but Plaintiff left the house to observe what the officers were doing to Mendez. (Berrios 35:12-21.)

Outside of the house, Plaintiff interacted with Gentile, who told Plaintiff to put his hands down. (Defs SOF ¶ 11; Pl. SOF ¶ 11; Berrios Dep. 34:4-18; 35:23-36:3; 36:16-20; 38:16-19.) Throughout this whole incident, the only person who physically touched Plaintiff was Gentile. (Berrios Trans. 42:10-15.) The parties greatly dispute what happened next.  The parties dispute what actions the officers took with Mendez. The parties dispute what type of force, if any, was used by the officers against Mendez and Plaintiff. Radio logs at 1:53:45 AM show a caller reporting to 911 that "Yeah, could I have a captain out to 4545 N. 7th Street…Yeah, the cops are ah beating these two guys up. They're, they're using too much force, like, they're hitting them with sticks." (Radio Logs at 1.53.45 AM.) A further call came in at 1:59:33 AM, where the caller reported that "I had two friends that had a little argument and they needed the cops out and just because they had an argument, the cops are over here beating them up for no reason. So I would like the captain to come out." (Radio Logs at 1.59.33 AM.)

Finally, the parties dispute whether any homophobic epithets and slurs were used. The Court notes that Plaintiff's claims that the Police used homophobic slurs are further corroborated by Rosario's Affidavit. (Rosario Aff.)

At some point, Plaintiff was handcuffed by Gentile. (Defs SOF ¶ 13; Pl. SOF 15; Berrios 39:7-40:1.) The parties dispute whether Gentile placed the handcuffs on tightly, or acted to twist

the handcuffs. While handcuffed, Plaintiff called for help. (Defs SOF ¶ 15; Pl. SOF ¶ 15; Berrios Dep. 40:7-15; 41:12-13.) While sitting in the police vehicle, Plaintiff banged his own head on the windshield on one occasion. (Defs SOF ¶ 14; Pl. SOF ¶ 14; Arrest Mem.; Berrios Dep. 40:16-18; 41:14-16; Gentile Dep. 13:5-8.) The parties dispute what the officers said to Plaintiff, and said to each other, in the police car.

Plaintiff was arrested. (Defs SOF ¶ 13; Pl. SOF ¶ 13.) Plaintiff was charged with possessing an instrument of crime with intent, simple assault, and recklessly endangering another person. (Defs SOF ¶ 16.) These charges were all withdrawn. (Defs SOF ¶ 16.)

As a result of this incident, a Philadelphia Police Department Domestic Violence Report, (Dkt No. 23, Ex. D [hereinafter DV Report]), Philadelphia Police Department Incident Report – 75-48, (Dkt No. 23, Ex. E [hereinafter Incident Rep.]), and a Philadelphia Police Department Investigation Report were filed. (Dkt No. 23, Ex. F [hereinafter Invest. Rep.]; Defs SOF ¶ 17; Pl. SOF ¶ 17.) Newbert, Tavarez, and Gentile are all listed as "arresting officers." (Incident Rep. at 2.)

## II.    Standard of Review

Under Fed. R. Civ. P. 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning they concern facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. A dispute is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

### III.   Discussion

#### a.   Plaintiff's claims for false arrest and false imprisonment must be dismissed because police officers had probable cause to arrest Plaintiff.

Under Count II of his Amended Complaint, Plaintiff alleges that Defendants Gentile, Tavarez, and Newbert violated his Fourth and Fourteenth Amendment rights to be free from false arrest, false imprisonment, and malicious prosecution. (AC ¶¶ 39-43.)

Section 1983 provides that a plaintiff may bring a lawsuit against a state actor for a violation of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Berg v. Cnty. of Allegheny,* 219 F.3d 261, 268 n. 3 (3d Cir. 2000). "The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." *Rogers v. Powell,* 120 F.3d 446, 452 (3d Cir.1997). Probable cause is a defense against false arrest and imprisonment claims under section 1983. *Pierson v. Ray*, 386 U.S. 547 (1967). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *U.S. v. Cruz*, 910 F2d. 1072 (3d

Cir. 1990) (citing *Dunaway v. New York*, 442 U.S. 200, 208 n. 9 (1979)); *see also Wilson v. Russo*, 212 F.3d 781, 789 (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Id.* at 788-89 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Plaintiff argues that there could not have been probable cause because the Police Defendants knew that Plaintiff was acting in self-defense. (Pl. Resp. at 5-6.) Plaintiff argues that he had informed Police Defendants that Mendez had "been choking him and hurting him," and that it "was only when he could not breathe" that Plaintiff hit Mendez. (Pl. Resp. at 5-6 (citing Berrios Dep. 23:10-17.)) Plaintiff further argues that Tavarez told Plaintiff that he understood that Plaintiff acted in self-defense. (Pl. Resp. at 6 (quoting Berrios Dep. 23:110-22.))

The Third Circuit has held that affirmative defenses may be relevant considerations in the assessment of probable cause. *Holman v. City of York, PA*, 564 F.3d 225, 231 (3d Cir. 2009). However, the Third Circuit has not definitively addressed whether the affirmative defense of self-defense may negate probable cause. *Gorman v. Bail*, 947 F.Supp.2d 509, 521 (E.D. Pa. 2013) (collecting and summarizing cases). The Third Circuit has addressed the interplay of other affirmative defenses and probable cause in three precedential opinions. *Holman*, 564 F.3d 225 (3d Cir. 2009); *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007); *Radich v. Goode*, 886 F.2d 1391 (3d Cir. 1989). In *Holman*, the Third Circuit held that the "necessity" affirmative defense "need not have been considered in the assessment of probable cause for arrest for trespass at the scene." 564 F.3d at 321. The Circuit held that a ruling to the contrary would require the arresting officer to "examine countless factual permutations to determine the 'necessity' of specific conduct at a given moment in time." *Id.* at 231.

In *Sands*, the Circuit held that an officer need not consider whether the charges are barred by a statute of limitations when determining whether there is probable cause. 502 F.3d at 269. The Circuit explained that this ruling was based on the officer's "limited training in law," and the fact that an on-the-scene analysis of the "ramifications of the statute of limitations defense" would be "too heavy a burden." *Id.*

In contrast, in *Radich*, the Circuit held that where a potential arrestee argues, prior to arrest, affirmative defenses that are specifically included in the statute setting forth the elements of the crime, then an officer must act "reasonably…under the facts and circumstances" known to him or her to determine whether that affirmative defense applied. *Holman*, 564 F.3d at 230 (quoting *Radich*, 886 F.2d at 1396).

More broadly, courts in this Circuit have consistently held that once an officer establishes probable cause for an arrest, that officer need not undertake further investigation in order to validate the probable cause the officer has already found. *See, e.g.*, *Cooper v. City of Philadelphia*, 2015 WL 619619, at *5 (E.D. Pa. 2015) ("Where an officer has established probable cause, however, he is 'not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed.'") (quoting *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 790 (3d Cir. 2000)); *Stetser v. Jinks*, 2013 WL 3791613, at *3 (E.D. Pa. 2013) (holding that "police officers have no duty to further investigate once they determine that probable cause has been established," including investigating any exculpatory evidence).

Fellow district courts in this Circuit have held that "as a matter of law, self-defense is not the type of affirmative defense that officers must consider or disclose in affidavits of probable cause." *Gorman*, 947 F.Supp.2d at 523; *see also Lue v. Borough of Collingdale*, 2015 WL 70931, at *5 (E.D. Pa. 2015) (holding that officers are "not required to resolve this inherently

fact-bound defense [of self-defense] on the scene"); *Miller v. Cuneo*, 2012 WL 4926471, at *6

(W.D. Pa. 2012) (holding that once probable cause was established, the officer was not required

to investigate whether the person arrested was a victim acting in self-defense or the aggressor in

a domestic violence situation). The *Gorman* court explained that:

> [C]laims of self-defense to an assault necessarily admit involvement in a violent altercation. Thus, self-defense is inherently an issue that must be decided at trial, not by a police officer or a judge at a hearing to issue an arrest warrant. In other words, the forum in which to exercise a defense of self-defense, at least on the facts of this case, is at trial, not in a subsequent civil rights civil suit that challenges the sufficiency of an affidavit of probable cause upon which an arrest warrant was issued by a judge.

947 F.Supp.2d at 523.

With this backdrop, the Court turns to the issue of probable cause in this case. In

Pennsylvania, a person is guilty of simple assault if he or she "attempts to cause or intentionally,

knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701. "A police officer

shall have the same right of arrest without a warrant as in a felony whenever he has probable

cause to believe the defendant has violated…section 2701…against a family or household

member although the offense did not take place in the presence of the police officer. A police

officer may not arrest a person pursuant to this section without first observing recent physical

injury to the victim or other corroborative evidence." 18 Pa.C.S.A. § 2711. The definition of

"family or household member" includes "current or former sexual or intimate partners." 23

Pa.C.S.A. § 6102.

In this case, undisputed facts include that Mendez identified Plaintiff as his boyfriend to

Police Defendants, Mendez told Police Defendants that Plaintiff had hit him with an iron,

Plaintiff admitted to Police Defendants that he hit Mendez with an iron, and Gentile arrested

Plaintiff. The undisputed evidence is sufficient to support a finding of probable cause for

Plaintiff's arrest for simple assault. Given the Pennsylvania statutes at issue, the fact that Plaintiff

was acting in self-defense, even if true and even if subjectively believed by the Police

Defendants (as evidenced by Tavarez's statement to Plaintiff on the scene), cannot overcome a

finding of probable cause. Summary judgment as to these claims is granted.

The Court notes that unlike the *Gorman* Court, this Court does not find that the

affirmative defense of self-defense can never be a consideration in the determination of probable

cause. However, the Court finds that such an affirmative defense would need to be a part of the

statutory language in the elements of the crime at issue in order to be considered. *See Radich*,

886 F.2d at 1396.

### b. Plaintiff's claims against Police Defendants for malicious prosecution fail because there was probable cause.

To establish a claim for malicious prosecution, Plaintiff must show that:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in the plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (quoting *Estate of Smith v.*

*Marasco,* 318 F.3d 497, 521 (3d Cir. 2003)). As previously addressed, there was probable cause.

Thus, Plaintiff cannot support a claim for malicious prosecution. Summary judgment as to these

claims is granted.

### c. Plaintiff's claim for equal protection fails because he has not shown any facts of a similarly situated individual who was treated differently.

Under Count VI of his Amended Complaint, Plaintiff alleges that Defendants Gentile,

Tavarez, and Newbert denied him equal protection of the law. (AC ¶¶ 62-66.) Specifically,

Plaintiff alleges a selective enforcement equal protection claim.

The Equal Protection Clause prohibits "selective discriminatory enforcement" of a facially valid law. *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013); *Jewish Home of Eastern PA v. Centers for Medicare and Medicaid Services*, 693 F.3d 359, 363 (3d Cir. 2012) (citing *Yick Wo v. Hopkins,* 118 U.S. 356, 373 (1886); *Holder v. City of Allentown,* 987 F.2d 188, 197 (3d Cir.1993)). To establish a selective enforcement claim, Plaintiff must show "(1) that it was treated differently from another, similarly situated facility, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right." *Dique v. N.J. State Police,* 603 F.3d 181, 184 n. 5 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quotation marks omitted)). Persons or parties are "similarly situated" for Equal Protection Clause purposes when "they are alike in all relevant aspects." *Startzell v. City of Phila.,* 533 F.3d 183, 203 (3d Cir.2008) (quoting *Nordinger v. Han*, 505 U.S. 1 ,10 (1992)).

Plaintiff has provided no evidence that he was treated differently from others who are similar to him in "all relevant respects." *Startzell*, 533 F.3d at 203. Summary judgment as to these claims is granted. *See Dombrosky v. Stewart*, 555 F. App'x 195, 197 (3d Cir. 2014) (non-precedential) (affirming district court's dismissal of equal protection claims where Plaintiff failed to present sufficient evidence regarding similarly situated individuals); *Verbanik v. Harlow*, 512 F. App'x 120, 123-24 (3d Cir. 2013) (non-precedential) (same); *Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 203-04 (3d Cir. 2011) (non-precedential) (same); *Poku v. imelman*, 448 F. App'x 217, 221 (3d Cir. 2011) (non-precedential) (same); *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (non-precedential) (same).

**d.  Plaintiff's state claims for malicious prosecution, arrest, imprisonment, all fail because there was probable cause.**

Under Count IV of his Amended Complaint, Plaintiff alleges that Defendants Gentile, Tavarez, and Newbert violated his state law rights to be free from false arrest, false imprisonment, and malicious prosecution. (AC ¶¶ 52-55.)

**i.  False arrest/False imprisonment**

"The elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is unlawful." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). "An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not." *Renk v. City of Pittsburgh,* 537 Pa. 68, 76, 641 A.2d 289, 293 (1994); *see also Fagan v. Pittsburgh Terminal Coal Corporation,* 299 Pa. 109, 149 A. 159 (1930). Probable cause exists when "the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Renk,* 537 Pa. 68, 76, 641 A.2d 289, 293 (1994) (quoting *Commonwealth v. Rodriguez,* 526 Pa. 268, 273, 585 A.2d 988, 990 (1991) (quotations marks omitted)).

Police Defendants had probable cause to arrest Plaintiff. Summary judgment as to these claims is granted.

**ii.  Malicious Prosecution**

The elements of malicious prosecution are: (1) institution of proceedings against the plaintiff without probable cause and with malice, and (2) the proceedings were terminated in favor of the plaintiff. *Turano v. Hunt,* 158 Pa. Cmwlth. 348, 631 A.2d 822, 824 (1993). "The basis of an action of malicious prosecution is want of probable cause *and* malice." *Hugee v.*

*Pennsylvania R. Co.*, 376 Pa. 286, 290 (1954) (quoting *Miller v. Pennsylvania R. Co.*, 371 Pa. 308, 312-13 (1952)). Due to the Court's finding of probable cause, summary judgment as to these claims is granted.

> **e. Plaintiff's claim for conspiracy fails.**

Under Count V of his Amended Complaint, Plaintiff alleges that Defendants Gentile, Tavarez, and Newbert conspired to violate his Fourth and Fourteenth Amendment rights. (AC ¶¶ 56-61.)

A cause of action for conspiracy to violate constitutional rights exists under section 1983. *Safeguard Mut. Ins. Co. v. Miller*, 477 F.Supp. 299 (E.D. Pa. 1979). A conspiracy under section 1983 requires that two or more conspirators reach an agreement to deprive a plaintiff of a constitutional right under color of law. *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir.1983) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). Such a conspiracy requires a meeting of the minds. *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008). "A plaintiff must allege a factual basis to support agreement and concerted action-the elements of conspiracy." *Campeggio v. Upper Pottsgrove Tp.*, 2014 WL 4435396, at *8 (E.D. Pa. 2014) (citing *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009)).To prove a conspiracy, a plaintiff must establish: (1) a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for the consequences; (2) the purpose of the plan was to violate the constitutional rights of the plaintiff; and (3) an overt act resulted in the actual deprivation of the plaintiff's constitutional rights. *Kelleher v. City of Reading*, 2002 WL 1067442, at *7 (E.D. Pa. 2002).

The Court has already dismissed Plaintiff's claims for false arrest/imprisonment, malicious prosecution, and equal protection violations. Given that Plaintiff has failed to

demonstrate the deprivation of a constitutional right under those claims, his conspiracy claims fail as to those claims. *See McCabe v. City of Philadelphia*, 2002 WL 32341787, at *4 (E.D. Pa. 2002).

The relevant remaining claim is the alleged use of excessive force by Gentile, and relevant bystander liability. Plaintiff has not adduced evidence establishing that there was a single plan whose purpose everyone knew. It is undisputed that Gentile was the only Police Defendant who physically touched Plaintiff. Thus, the Court cannot find any evidence that the Police Defendants all conspired to use excessive force against Plaintiff. Summary judgment as to these claims is granted.

Plaintiff's claims against Tavarez and Newbert relating to the alleged excessive use of force by Gentile are instead appropriately addressed as "bystander liability," discussed *infra*. *See, e.g.*, *Brown v. Prison Health Services*, 2013 WL 6139646, at *8 (E.D. Pa. 2013).

**f.   Plaintiff's claims for bystander liability against Newbert and Tavarez survive.**

Under Count III of his Amended Complaint, Plaintiff alleges that Defendants Gentile, Tavarez, and Newbert can all be found guilty for any violations to his Fourth and Fourteenth Amendment rights due to their failure to act or intervene. (AC ¶¶ 44-51.) Plaintiff alleges that both officers and the Detective had the opportunity to intervene and prevent any further violation of Plaintiff's rights and failed to do so.

As a preliminary matter, the Court dismisses the claim for bystander liability against Gentile. The only remaining claim against the Police Defendants for violations of federal rights is Count I against Gentile for the excessive force. Gentile cannot be liable as a "bystander" to actions that he personally committed.

14

As to Tavarez and Newbert, there appears to be a genuine issue of material fact as to whether either could be found liable for failure to intervene as a bystander. The Third Circuit has held that a state officer can be held liable "if the [officer] had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). The "officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 61. In general, officers should take reasonable steps to protect a victim from another officer's excessive force. *Adams v. Officer Eric Selhorst*, 449 F. App'x 198 (3d Cir. 2011) (non-precedential). Thus, to establish bystander liability, Plaintiff must show that (1) Tavarez and Newbert had a duty to intervene, (2) they had the opportunity to intervene, and (3) they failed to intervene. *Crawford v. Beard*, 2004 WL 1631400, at *3 (E.D. Pa. 2004).

In this case, there are material and genuinely disputed facts as to whether (1) there was excessive force used against Plaintiff; (2) whether one or both of Defendants had a reasonable opportunity to intervene and prevent a possible violation of Plaintiff's rights. Summary judgment as to this claim is denied.

### i. Defendant Newbert shall not be dismissed from Plaintiff's claim for bystander liability.

Defendants moved to dismiss Defendant Newbert from this case in toto. The only remaining claim related to Newbert is bystander liability for failure to intervene to prevent the excessive use of force. All other claims have previously been dismissed. Defendants argue that there are no facts in the record pertaining specifically to Newbert's involvement.

In a civil rights case brought pursuant to 42 U.S.C. § 1983, Plaintiff must show that the Defendant, acting under the color of state law, deprived him of "rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Parratt v. Taylor,* 451 U.S. 527,

535 (1981). An individual state actor is liable under section 1983 only where he or she played an "affirmative part" in the alleged misconduct. *Mason v. City of Philadelphia*, 2014 WL 4722640, at *5 (E.D. Pa. 2014) (citing *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (internal citations omitted)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt,* 451 U.S. at 537 n. 3). Personal involvement can be shown through allegations of "personal direction of or actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08.  A showing of actual knowledge must be made with "appropriate particularity." *Id.*

Newbert was one of Plaintiff's arresting officers. (Incident Rep. at 2.) There remain material disputes of fact as to what role Newbert played in the events on the morning of the arrest regarding Newbert's liability for bystander liability. Plaintiff's claim against Newbert for bystander liability remains. Summary judgment was granted as to all other claims against Newbert.

### g.   Claims against the City of Philadelphia shall be dismissed.

Under Count VII of his Amended Complaint, Plaintiff alleges that the City of Philadelphia failed to train and supervise in violation of Plaintiff's Fourteenth Amendment rights. (AC ¶¶ 67-70.)

### i.   Failure to Train

A municipality, and its agencies, may be liable under section 1983 where the entity has a policy or custom which violates a plaintiff's constitutional rights. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[T]here are limited circumstances in which an allegation of failure to train can be the basis for liability under § 1983." *City of Canton v. Harris*,

489 U.S. 378, 387 (1989). A district court must look to (1) whether the training program is adequate and (2) whether any inadequate training "can justifiably be said to represent city policy." *Id.* at 390 (internal quotations omitted). In other words, a municipality will only be liable for inadequate training if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* "Courts should be careful not to impose liability merely because municipal training *could* have been more thorough or comprehensive – that question will almost always be answered in the affirmative. Rather the question is whether the training *should* have been more thorough or comprehensive, an inquiry that focuses on the deliberate indifference standard." *Id.* at 392.

Plaintiff's Amended Complaint alleges that the City acted with deliberate indifference by "systematically failing to properly train, supervise and/or discipline police officers and detectives in order to deter and prevent violations of the constitutional rights of individual in general and Hispanic, African Americans and homosexuals in particular by police officers and detectives." (AC ¶ 69.) As a preliminary matter, the Court dismisses any claim against the City related to race and ethnicity as Plaintiff has presented no evidence related to such claims. Moreover, Plaintiff abandoned defending any race or ethnicity based claims in its response to Defendants' Motion for Summary Judgment, focusing only on the claims related to "sexual diversity." (Pl. Resp. at 4-5.)

Plaintiff's remaining claim argues that the City has failed to train officers and detectives on anti-harassment training relating to the LGBT community. In Defendants' Motion for Summary Judgment, the City argues that "Plaintiff has failed to adduce any specific evidence

that the City of Philadelphia has any custom or policy which was the proximate cause of alleged violation of Plaintiff's right[s]." (MSJ at 9.)

According to Plaintiff's Amended Complaint and Response to this Motion, the City does not offer their officers/detectives any training regarding respect and tolerance for the LGBT community. Defendants have not provided any evidence to refute that contention. Plaintiff's theory is that this failure to train caused the Police Defendants to use excessive force, as both perpetrators and bystanders, on the night in question. As to that night, there is a substantial dispute of fact regarding whether Police Defendants repeatedly used homophobic slurs and other demeaning words related to the fact that Plaintiff and Mendez were boyfriends. There is a dispute of fact regarding whether the alleged use of excessive force coincided with the Police Defendants discovering that Plaintiff was in a relationship with Mendez. Further, there is a dispute of fact as to whether such a coincidence of timing would in fact show a causation of homophobic animus leading to the use of excessive force. Assuming that Plaintiff's version of events is correct, due to the lack of sexual orientation/diversity training, multiple officers/detectives used excessive force on Plaintiff because he had a boyfriend.

To support his position, Plaintiff points to a March 28, 2013 Police Advisory Commission Opinion, regarding Complaint No. 31279, wherein the PAC recommended the following:

> **Recommendation 10: The Police need to implement a sexual orientation/diversity training course as part of police academy training.** The core training for Philadelphia police academy cadets is set forth pursuant to "Act 120," Municipal Police Education and Training, 53 Pa.C.S. §2161 et seq., which established the Municipal Police Officers Education and Training Commission. Basic course requirements are described in 37 Pa. Code § 203.51. These basic course requirements cover 16 specific topics, one of which is human relations skill. The treatment of Nizah Morris and the appalling "investigation" into her homicide, as well as police interaction with other members of the LGBT community, clearly demonstrates that the police require more diversity training in

their academy training…The Philadelphia Police Department has attempted to bolster this area with a 60 minute seminar with members of the LGBT community after the cadets have already completed their course requirements. The Police Advisory Commission finds this will not develop the human relations skills appropriate for dealing with a sizeable portion of Philadelphia citizenry.

One of the first community meetings of the reconstituted Police Advisory Commission in January, 2011, was at the William Way Community Center and we heard serious concerns voiced by the LGBT community. We heard from civic and community leaders that, although the upper echelons of the Police acted appropriately to members of the LGBT community, that did not permeate to the rank and file. The Nizah Morris matter was not handled appropriately, nor investigated appropriately, due, in part, we believe, because she was a transwoman…

(Dkt No. 24, Ex. D, Police Advisory Commission Opinion re: Complaint No. 31279 (March 28, 2013) [hereinafter PAC].)

Plaintiff relies on this evidence to demonstrate that the City "has, for well over a decade continued to let officers harass, wrongfully arrest, assault, beat, call names and otherwise fail to respect members of the LGBT community and treat them the same as non-LGBT members." (Pl. resp. at 4.)

To identify deliberate indifference, a Plaintiff typically needs to point to a pattern of underlying constitutional violations. *Carswell v. Borough of Homestead*, 381 F.3d 235 (3d Cir. 2004) (quoting *Berg v. County of Allegheny*, 219 F.3d 276 (3d Cir. 2000)). The only remaining constitutional violations pending in this case are for excessive force, including bystander liability. Thus, to show a pattern, Plaintiff would need to point to other incidents of excessive force. Generously construing the evidence presented, this report shows a second instance where members of the Philadelphia Police Department allegedly did not handle a police situation "appropriately" because the victim was identified as a member of the LGBT community.[1]

---

[1] The Court notes that the PAC's findings were specific to the fact that Ms. Morris "was a transwoman" and Plaintiff's claims are related to the police identifying that he had a boyfriend. However, the Court grants that each case relates to an alleged victimization of a person perceived by police to be a member of the LGBT community.

"Appropriate" handling is not commensurate with a constitutional violation of use of excessive force. This report does not concern excessive force. Even generously construing this evidence, Plaintiff has not presented a "pattern" of discrimination related to his claim. Plaintiff has presented only a single instance of allegedly unconstitutional conduct. "Although it is possible, proving deliberate indifferent in the absence of such a pattern is a difficult task." *Carswell*, 381 F.3d at 244 (citing *Berg*, 219 F.3d 276 (3d Cir. 2000)).

A single constitutional violation can provide a basis for municipal liability for a failure to train claim without establishing a pattern of violations, if a plaintiff shows that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that inaction amounts to deliberate indifference. *Christopher v. Nestlerode,* 240 F. App'x 481, 489 (3d Cir.2007) (*quoting City of Canton,* 489 U.S. at 391); *see also Must v. West Hills Police Dep't,* 126 F. App'x 539, 544 (3d Cir. 2005). "In addition to proving deliberate indifference, a plaintiff must also demonstrate that the inadequate training caused a constitutional violation." *Carswell*, 381 F. at 244-45 (citing *Grazier v. City of Philadelphia,* 328 F.3d 120, 124–25 (3d Cir. 2003). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton,* 489 U.S. at 385.

Plaintiff does not offer any evidence to support a finding that there was an obvious need for sexual orientation training to prevent the use of excessive force against members of the LGBT community, or that not providing such training would likely result in a violation of constitutional rights. First, the report was released years after the incident in this case. Second, while the report does note that the LGBT community is a "sizeable portion of the Philadelphia citizenry," a point obvious to the City, (PAC at 10), it does not demonstrate that the fact of this "sizeable" population necessarily demanded sexual orientation/diversity training to prevent the

use of excessive force specifically against the LGBT community. The report does not concern excessive force specifically. The report does not show that it was, or should have been, patently obvious to the City of Philadelphia that due to the "sizeable" LGBT community, there was a strong likelihood that officers would illegally, and in violation of the Constitution, use excessive force against members of the LGBT community. The report does not cite any statistics, or quote any qualitative data, showing that the City was receiving complaints related to the use of excessive force against members of the LGBT community. The report does not state that the purpose of the recommended sexual orientation/diversity training would be to prevent the use of excessive force.

The Court does not dispute that evidence to the contrary may exist. Yet, the Court may only consider the record before it. No such evidence was presented to the Court in this case. The record demonstrates that Plaintiff has failed to meet his burden of pointing to sufficient evidence from which a reasonable juror could find deliberate indifference on the part of the City of Philadelphia. There is also a lack of evidence in the record to establish that the failure to train the Police Defendants actually caused the alleged use of excessive force. Summary judgment as to this claim is granted.

### ii.  Failure to Supervise

Plaintiff argues that he has presented evidence to show that "the top ranks have always permitted the lower ranks of the Philadelphia Police Department to abuse, harass, assault and/or otherwise name call those with the different sexual orientation or preference and members of the LGBT Community." (Pl. Resp. at 5.) Failure to intervene may be grounds for a "custom," where a plaintiff can show that there have been a number of complaints regarding the constitutional violation and that the city improperly investigated those complaints. *Beck v. City of Pittsburgh*,

89 F.3d 966, 975-76 (3d Cir. 1996). Prior complaints effectively put the municipality on notice of the likelihood of future constitutional violations, and the municipality's failure to intervene in such instances could amount to a "custom" of acquiescence to the constitutional violations. *Id.* at 974.

As previously addressed, Plaintiff has failed to point to any prior complaints regarding excessive force, let alone any instances in which the City declined to investigate or engaged in inadequate investigations of prior complaints. The report cited to by Plaintiff is not related to excessive force.

In fact, the report specifically notes that "LGBT community" members stated at a PAC meeting that "the upper echelons of the Police acted appropriately to members of the LGBT community." (PAC at 10.) The report does not state that these "upper echelons" were aware that the "rank and file" were not acting appropriately. Summary judgment as to this claim is granted.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.